## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **KELLI WILSON** | : | Case No. 2:20CV06184 |
| 2501 Hyacinth Lane | : | |
| Columbus, OH 43235 | : | Judge |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **OHIO DEPARTMENT** | : | |
| **OF MENTAL HEALTH &** | : | |
| **ADDICTION SERVICES** | : | |
| 30 East Broad Street | : | |
| Columbus, OH 43215 | : | |
| | : | |
| **Defendant.** | : | |

_____

## COMPLAINT AND JURY DEMAND
_____

Now comes Plaintiff Kelli Wilson, who for her Complaint against the Ohio Department of Mental Health & Addiction Services ("ODMHAS"), states as follows:

### I. PRELIMINARY STATEMENT

1. This action arises under the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* and the Ohio Civil Rights Act, O.R.C. § 4112.02, *et seq.* Ms. Wilson, a former employee of Defendant, alleges that Defendant violated her rights under state and federal law by terminating her because of her disability.

2. Ms. Wilson seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for her economic injuries, compensatory damages for her non-economic injuries, equitable relief in the form of reinstatement or front pay, and punitive damages. Finally, Ms. Wilson seeks payment of her attorney fees and costs in prosecuting this matter.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, 29 U.S.C. § 701, *et. seq.* This Court may assume supplemental jurisdiction over Plaintiff's claims under Ohio law pursuant to 28 U.S.C. § 1367 because her state law claims arise from the same case or controversy as her federal claims.

4. Venue with this Court is appropriate because the acts complained of herein occurred within the Southern District of Ohio.

## III. PARTIES

5. Plaintiff Kelli Wilson is a United States citizen and a resident of Columbus, Ohio. Ms. Wilson worked for ODMHAS as an external auditor.

6. Defendant ODMHAS is an administrative department of the Ohio state government responsible for providing mental health and addiction prevention, treatment, and recovery.

## IV. STATEMENT OF THE CASE

7. ODMHAS hired Ms. Wilson on or about November 14, 2013 as an External Auditor II.

8. As an External Auditor II, Ms. Wilson was responsible for auditing entities that were awarded grant funds by ODMHAS to ensure funds were being used appropriately.

9. Ms. Wilson suffers from several disabilities including general anxiety disorder, depression, and Attention Deficit Hyperactive Disorder ("ADHD").

10. Ms. Wilson's general anxiety disorder, depression, and ADHD are mental impairments that substantially limit the normal operation of her neurological system.

Occasionally, these disabilities cause significant flareups which incapacitate Ms. Wilson for one to two days at a time.

11. As a result of her disabilities, Ms. Wilson requested intermittent FMLA in May 2016. ODMHAS approved that request.

12. Because Ms. Wilson was using a significant amount of her FMLA leave, ODMHAS required recertification of Ms. Wilson's FMLA leave in September 2016.

13. Ms. Wilson provided ODMHAS with an updated FMLA certification, which ODMHAS approved.

14. In December 2016, Ms. Wilson's long-time psychiatrist suddenly passed away.

15. The passing of Ms. Wilson's psychiatrist greatly impacted her and, as a result, had a negative impact on her disabilities. As a result, Ms. Wilson's attendance at work suffered.

16. Because of Ms. Wilson's absences, ODMHAS suggested Ms. Wilson apply for short-term disability.

17. In response, Ms. Wilson asked ODMHAS if it could make any reasonable accommodations that would allow her to continue to work short of applying for short-term disability.

18. ODMHAS refused to provide any accommodation or engage in the interactive process. Rather, ODMHAS told Ms. Wilson her options were to go on short-term disability or be terminated.

19. In late March 2017, and because she had no other option, Ms. Wilson submitted short-term disability paperwork to ODMHAS. OMDHAS approved her application.

20. Over the next three months, Ms. Wilson contacted ODMHAS several times to discuss her options for returning to the agency. ODMHAS informed Ms. Wilson that she

would be eligible for FMLA leave upon her return and that she would not have to provide a new FMLA certification.

21. Ms. Wilson used continuous short-term disability leave until July 6, 2017. She returned to work on July 7, 2017.

22. On July 11, 2017, Ms. Wilson contacted her supervisor, Chiwayi Lin, to request a day off from work. Mr. Lin told Ms. Wilson to use her accrued but unused vacation leave for the day. But when Ms. Wilson inputted a vacation day into ODMHAS's attendance system, ODMHAS denied her request to use a vacation day. Neither Mr. Lin nor anyone else at ODMHAS contacted Ms. Wilson to discuss how she should report her absence.

23. Ms. Wilson utilized her FMLA leave on July 24 and 25. Upon her return to work, Ann Tomson, an employee in ODMHAS's human resources department, informed her that, contrary to previous assertions, Ms. Wilson had no FMLA leave available and, furthermore, was not eligible for FMLA leave.

24. In that same meeting, Ms. Tomson told Ms. Wilson that she did not have a "real disability" and "used [her] disability for personal benefit to come and go" as she pleased.

25. Because she had no FMLA eligibility, Ms. Wilson requested additional unpaid medical leave as a reasonable accommodation. Ms. Tomson immediately denied Ms. Wilson's request.

26. Because ODMHAS refused to accommodate Ms. Wilson, she was forced to take short-term disability leave whenever she experienced a flareup.

27. Due to the nature of the leave, Ms. Wilson had to take a block of time between 2 weeks to a month at a time, even if a flareup lasted one to two days.

28. Every time Ms. Wilson experienced a flareup, she asked ODMHAS to allow her to take unpaid leave, use her vacation leave, or use flex time so that she did not have to use

her short-term disability. ODMHAS refused. Ms. Wilson experienced flareups almost every month between July 2017 and September 2018, causing her to miss most workdays during that period.

29. On March 30, 2018, Ms. Wilson told Mr. Lin that ODMHAS was discriminating against her because of her disabilities and was refusing to accommodate her.

30. On August 29, 2018, Ms. Wilson emailed Vince Conner, Deputy Director of Human Resources, to complain that Ms. Tomson was discriminating against her because of her disabilities and was refusing to accommodate her.

31. Ms. Wilson spoke with Mr. Conner on August 31, 2018 over the phone to discuss the details of her allegations. Following that phone call, Mr. Conner told Ms. Wilson someone would contact her to address her claim of discrimination.

32. On Tuesday, September 4, LaToya King, EEO Regional Program Administrator at ODMHAS, sent a letter to Ms. Wilson informing her that Ms. King had been assigned to her complaint.

33. Ms. Wilson returned to work from short-term disability leave on or about September 16, 2018. By that time, Ms. Wilson had exhausted all of her short-term disability leave entitlement.

34. On September 17, 2018, Ms. Wilson had an in-person meeting with Ms. King. Ms. Wilson expressed her concerns regarding how she had been treated by Ms. Tomson and ODMHAS, citing her past conversations with Ms. Tomson and ODMHAS's refusal to allow her to use her vacation time on days she reported absences.

35. Ms. King told Ms. Wilson that, in addition to filing an internal complaint, Ms. Wilson could file a complaint with an outside agency, such as the Ohio Civil Rights

Commission ("OCRC") or the Equal Employment Opportunity Commission ("EEOC"). Ms. Wilson told Ms. King that she may consider that course of action.

36. Following that meeting, Ms. King sent an email to Ms. Wilson telling her that she would not conduct any investigation into Ms. Wilson's complaints until she had heard from the OCRC or EEOC, in contradiction to agency policy that claims that all complaints of discrimination are investigated internally.

37. On September 26, 2018, Ms. Wilson experienced another flareup of her disability. Accordingly, she requested flex time for the remainder of the work week.

38. On September 27, 2018, ODMHAS denied that request. Because of this, Ms. Wilson submitted a request for unpaid leave. OMDHAS denied that request.

39. On Wednesday, October 3, 2018, Lorie Spolarich, Labor Relations Officer at ODMHAS, called Ms. Wilson into her office.

40. Ms. Spolarich informed Ms. Wilson that ODMHAS was investigating Ms. Wilson for utilizing sick leave on July 11, 2018 when she allegedly did not have any sick leave available.

41. Ms. Wilson informed Ms. Spolarich that one of her complaints raised to Ms. King was the July 11 denial of her use of vacation leave. Ms. Spolarich refused to discuss Ms. Wilson's complaint.

42. Because of the hostility in the workplace, Ms. Wilson suffered a panic attack on October 4, 2018. That same day, she submitted a retaliation complaint with Ms. King for the investigation human resources had lodged against her.

43. Ms. Wilson further told Ms. King she did not feel safe reporting to work and feared further retaliation from ODMHAS.

44. That same day, Ms. King responded to Ms. Wilson's email telling her to add her complaint of retaliation to an outside agency and to contact human resources if she needed to take short-term disability.

45. Between October 4, 2018 and December 3, 2018, Ms. Wilson called in sick to work, claiming she could not come in due to the hostility and treatment she was receiving because of her disability.

46. ODMHAS terminated Ms. Wilson on December 3, 2018 for absenteeism.

47. As a result of ODMHAS's illegal conduct, Ms. Wilson has suffered damages including lost wages and emotional distress.

## V. STATEMENT OF THE CLAIMS

### Count 1: Failure to Accommodate
### (29 U.S.C. § 701 and O.R.C. § 4112.02)

48. Ms. Wilson incorporates paragraphs 1 through 47 as if fully rewritten herein.

49. Ms. Wilson suffers from a disability.

50. Ms. Wilson was otherwise qualified to work for ODMHAS with a reasonable accommodation.

51. ODMHAS was aware of Ms. Wilson's disability.

52. Ms. Wilson requested an accommodation in the form of unpaid medical leave, flex leave, or the ability to use her vacation leave instead of sick leave. The accommodations are reasonable because any of the accommodations would allow Ms. Wilson to perform the essential functions of her job and would not unduly harm ODMHAS.

53. A causal connection exists between Ms. Wilson's disability and the request for accommodation.

54. ODMHAS failed to provide the necessary accommodation and did not propose a reasonable, alternative accommodation that would allow Ms. Wilson to perform the essential functions of her position.

55. As a result of ODMHAS's illegal actions, Ms. Wilson has suffered damages including lost wages and emotional distress.

56. ODMHAS acted with malice and a conscious disregard for Ms. Wilson's rights under federal law not to be subjected to discrimination in her employment on account of a disability.

### Count 2: Disability Discrimination
### (29 U.S.C. § 701 and O.R.C. § 4112.02)

57. Ms. Wilson incorporates paragraphs 1 through 56 as if fully rewritten herein.

58. Ms. Wilson suffers from a disability.

59. Ms. Wilson is qualified to perform the essential functions of her position with a reasonable accommodation.

60. ODMHAS terminated Ms. Wilson because of her disability.

61. As a result of ODMHAS's illegal actions, Ms. Wilson has suffered damages including lost wages and emotional distress.

62. ODMHAS acted with malice and a conscious disregard for Ms. Wilson's rights under federal law not to be subjected to discrimination in her employment on account of a disability.

### Count 3: Retaliation
### (29 U.S.C. § 701 and O.R.C. § 4112.02)

63. Ms. Wilson incorporates paragraphs 1 through 62 as if fully rewritten herein.

64. Ms. Wilson engaged in protected activity when she complained of disability discrimination.

65. ODMHAS was aware of her complaints.

66. ODMHAS terminated Ms. Wilson.

67. There is a causal connection between Ms. Wilson's termination and her complaints of disability discrimination.

68. As a result of ODMHAS's illegal actions, Ms. Wilson has suffered damages including lost wages and emotional distress.

69. ODMHAS acted with malice and a conscious disregard for Ms. Wilson's rights under federal law not to be subjected to discrimination in her employment on account of a disability.

## **PRAYER FOR RELIEF**

Wherefore, Kelli Wilson demands judgment against the Ohio Department of Mental Health & Addiction Services as follows:

1. An award of compensatory damages for all economic damages suffered by Ms. Wilson in an amount to be determined at trial;

2. An award of compensatory damages for all non-economic damages suffered by Ms. Wilson in an amount to be determined at trial;

3. For an order reinstating Ms. Wilson to her previous position at ODMHAS, inclusive of all pay increases and benefits to which he would have been entitled had she not been terminated, or in the alternative, an award of front pay;

4. For an award of Ms. Wilson's reasonable attorney fees and costs;

5. For an award of any other relief in law or equity to which Ms. Wilson is entitled to under the premises.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
Daniel J. Treadaway (OH No. 0098000)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
dtreadaway@mezibov.com

*Attorneys for Plaintiff Kelli Wilson*

## JURY DEMAND

Plaintiff Kelli Wilson demands a jury trial to resolve all issues of fact related to her Complaint.

/s/ Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)